**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**ERNEST LOPEZ,**

       **Plaintiff,**                  **CIVIL ACTION NO. 13-10732**

   vs.

                                   **DISTRICT JUDGE VICTORIA A. ROBERTS**

**COMMISSIONER OF**                  **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

       **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

**I.     RECOMMENDATION:** This Court recommends that Plaintiff's motion for summary judgment (docket no. 8) be **DENIED**, Defendant's motion for summary judgment (docket no. 11) be **GRANTED**, and the instant case be dismissed.

**II.    PROCEDURAL HISTORY:**

Plaintiff protectively filed applications for a period of disability, disability insurance benefits, and supplemental security income on February 19, 2010, alleging disability beginning January 1, 2002 due to mental problems. (TR 76, 158-68, 179, 208). He subsequently amended his disability onset date to April 6, 2010. (TR 47, 178). The Social Security Administration denied benefits and Plaintiff filed a written request for a *de novo* hearing. On May 12, 2011 Plaintiff appeared with counsel in Mt. Pleasant, Michigan and testified at a hearing held by Administrative Law Judge (ALJ) Tammy A. Thames. (TR 43-75). Vocational Expert (VE) Richard Riedl also appeared and testified at the hearing. In an August 12, 2011 decision the ALJ found that Plaintiff was not entitled to disability benefits because he remained capable of performing his past relevant work as a home

1

attendant and delivery driver. (TR 28-38). The Appeals Council declined to review the ALJ's decision and Plaintiff filed a complaint for judicial review. The parties filed cross motions for summary judgment which are currently before the Court.

### III. PLAINTIFF'S TESTIMONY AND MEDICAL EVIDENCE

#### A. Plaintiff's Testimony

Plaintiff was approximately forty-three years old on his alleged disability onset date. He completed the eighth grade in school and participated in a training program in building maintenance while incarcerated. (TR 47-48). Plaintiff testified that he lives at home with his parents. At the time of the hearing he was working as a home attendant for a disabled friend, with whom he shares a child. (TR 48-49, 69-70). His stated that he washes dishes, grocery shops and performs odd jobs in his home attendant position. Plaintiff reported that he sees his child every day. (TR 54).

Plaintiff testified that he is unable to work due to bipolar disorder with depression and anxiety. (TR 51, 58). He stated that he has had problems with depression and anxiety all of his life but he only recently began treatment for his condition in 2010. (TR 51-52). He reported that he has a history of drug and alcohol use. (TR 52). Plaintiff stated that he experiences "down" moods with his bipolar disorder during which he isolates from others and he lacks motivation. (TR 57, 59). His activities on a typical day include watching television all day. (TR 57). Plaintiff testified that he takes Trileptal to control his impulsiveness and help him avoid drinking. (TR 55).

#### B. Medical Evidence

The undersigned has thoroughly reviewed Plaintiff's medical record. In lieu of summarizing his medical history, the undersigned will make references and citations to the record as necessary in response to the parties' arguments.

**IV.     VOCATIONAL EXPERT TESTIMONY**

The VE testified that Plaintiff has past work as a framer at a medium semi-skilled level, as a home attendant at a light unskilled level, as a cashier at a light unskilled level, and as a delivery driver at a light unskilled level.  (TR 65-66).  The ALJ asked the VE to testify whether jobs were available for an individual of Plaintiff's age, education, and past relevant work experience who has the physical capacity to perform work at all exertional levels with the following limitations: (a) able to understand, remember and carry out simple instructions and perform simple tasks, (b) no production rate pace work, (c) able to perform goal oriented work, and (d) no more than occasional interaction with the public and coworkers.  (TR 66).  The VE testified that an individual with these limitations would be capable of performing Plaintiff's past work as a home attendant and delivery driver.  The VE further testified that the above hypothetical would allow for the majority of unskilled simple work that was not production piece rate oriented, such as a cleaner, auto detailer, and dishwasher, comprising approximately 21,600 jobs in the lower peninsula of Michigan.

Next the ALJ asked the VE whether jobs were available for an individual of Plaintiff's age, education and work experience who had the physical capacity to perform jobs at all exertional levels with these limitations: (a) not able to understand, remember and carry out very short and simple instructions on a regular and sustained basis, (b) not able to maintain regular attendance and be punctual, (c) not able to sustain an ordinary routine without special supervision on a frequent basis, (d) unable to work in coordination with or in proximity to others, (d) unable to interact with the public or coworkers, and (e) unable to make simple work-related decisions.  The VE testified that an individual with these limitations would not be capable of performing competitive employment.

**V.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION**

The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2011. She also found that although Plaintiff has not engaged in substantial gainful activity since his alleged onset date of April 6, 2010, and suffers from the severe impairments of major depressive disorder, polysubstance/alcohol dependence in partial remission, antisocial personality disorder, and impulse control disorder, he did not have an impairment or combination of impairments that meets or equals a listed impairment. (TR 28-33).

The ALJ determined that Plaintiff has the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following nonexertional limitations: (a) able to understand, remember and carry out simple instructions and perform simple tasks, (b) no production rate pace work, (c) able to perform goal oriented work, and (d) no more than occasional interaction with the public or coworkers. (TR 33-36). The ALJ concluded that Plaintiff is capable of performing past relevant work as a home attendant and delivery driver, as well as other jobs that exist in significant numbers in the national economy. (TR 36-37). Consequently, the ALJ found that Plaintiff has not been under a disability as defined in the Social Security Act from the onset date of April 6, 2010 through August 12, 2011, the date of the ALJ's decision. (TR 37-38).

## VI.   LAW AND ANALYSIS

### A.   Standard Of Review

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

**B.      Framework for Social Security Disability Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

1. he was not engaged in substantial gainful employment; and
2. he suffered from a severe impairment; and
3. the impairment met or was medically equal to a "listed impairment;" or
4. he did not have the residual functional capacity to perform his past relevant work.

20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). If Plaintiff's impairments prevented him from doing his past relevant work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir.

5

1987) (citation omitted). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question if the question accurately portrays the plaintiff's physical and mental impairments. *Id.* (citations omitted).

**C.    Analysis**

The Social Security Act authorizes "two types of remand: (1) a post-judgment remand in conjunction with a decision affirming, modifying, or reversing the decision of the Secretary (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the Secretary (a sentence-six remand)." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence four remand, the Court has the authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a hearing." 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, No. 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff argues that the ALJ erred in assessing his credibility, improperly relied upon the testimony of the VE whose testimony was in response to a hypothetical question that did not accurately portray his impairments, and erred in assessing his ability to perform his past relevant work.

*1.    Credibility Assessment*

Plaintiff argues that the ALJ incorrectly weighed his testimony, providing only a simple conclusionary statement that his testimony was not fully credible. He contends that the ALJ failed

to explain her reasons for making this credibility assessment.

It is well known that "[s]ince the ALJ has the opportunity to observe the demeanor of a witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey v. Sec'y of Health & Human Servs,* 987 F.2d 1230, 1234 (6th Cir. 1993) (citation omitted). But credibility assessments are not insulated from judicial review. A finding that a claimant is not credible must be supported by substantial evidence in the same manner as any other ultimate factual determination.

> In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.
>
> . . . The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision.

S.S.R. 96-7p, 1996 WL 362209, at *34485-86. The assessment must be based on a consideration of all of the evidence in the case record, including

> Statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

*Id.* at *34486.

The regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your

ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). In addition to the available objective medical evidence, the ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

Here, the ALJ summarized Plaintiff's testimony and his subjective complaints about the effects of his symptoms on his ability to function and work. The ALJ noted that Plaintiff alleged having difficulty with talking, remembering, concentrating, understanding, and following instructions. She considered his statements that he does not handle stress or changes in routine well, that he does not spend time with others, and that he was not able to sustain a regular work schedule when depressed. (TR 32-33). She also acknowledged that Plaintiff complained of sleep disturbances, fluctuating concentration, depressive spells, and poor impulse control.

Next, the ALJ considered the objective medical evidence. She noted that Plaintiff had a history of alcohol and cocaine dependence. She considered evidence showing that Plaintiff was diagnosed with an impulse control disorder, alcohol and crack cocaine dependency in partial remission, bipolar disorder, major depressive disorder, polysubstance dependence, and an anti-social personality disorder. (TR 30-31). The ALJ recognized that Plaintiff struggled with social isolation, anhedonia, decreased concentration and motivation, irritability, and feelings of worthlessness and

hopelessness. She also recognized that he was found to have abnormalities in his concentration, abstract reasoning, and calculation tasks.

The ALJ took all of this evidence into consideration yet concluded that Plaintiff's impairments may not be as severe as he alleged. To support her conclusion, the ALJ cited to specific evidence in the record showing that Plaintiff was found to have intact cognitive functions, no impairment of short or long-term memory, spontaneous and well-organized thoughts, and good contact with reality. She noted that Plaintiff was observed to be cooperative and attentive during medical examinations. She also noted that medical practitioners documented that Plaintiff's ability to maintain concentration, understand, and complete tasks and expectations were only "a bit" impaired. In addition, the ALJ considered a psychological report that showed that Plaintiff retained the capacity to perform simple, routine tasks on a sustained basis.

As required by the regulations, the ALJ discussed other evidence of record in addition to the objective medical evidence. For instance, the ALJ considered Plaintiff's daily activities, noting that he shopped for groceries, cleaned, prepared food, watched television, and maintained employment as a caretaker for seven years. She noted that Plaintiff attended substance abuse meetings three times a week and spent time with his girlfriend, mother-in-law, and son. She addressed Plaintiff's medication use and noted that Plaintiff reported a significant improvement in his mental state after he was placed on medication. She also cited to a medical report that showed that Plaintiff was stable on his mood stabilizing medication, and she noted that Plaintiff has never been hospitalized or seen by a psychiatrist. All of this goes to show that the ALJ did not reject Plaintiff's statements about the intensity and persistence of his symptoms solely because the objective medical evidence did not support his statements, but rather considered other relevant factors as required by 20 C.F.R.

9

§§ 404.1529(c)(3), 416.929(c)(3).

The ALJ considered all of the above and concluded that Plaintiff's complaints of disabling symptoms were not credible and not supported by the record as a whole. However, the ALJ did not fully discredit Plaintiff's testimony. In fact, the ALJ imposed nonexertional limitations on Plaintiff's ability to work, limiting him to simple tasks that would require him to understand, remember and carry out only simple instructions, no production rate pace work, and no more than occasional interaction with the public or coworkers.

It is the undersigned's opinion that the ALJ considered appropriate factors, supported her credibility finding with substantial evidence, and provided a clear and reasonable explanation for why she found that Plaintiff's testimony was not fully credible. The ALJ's credibility assessment should not be disturbed.

2.    *Hypothetical Question*

Next, Plaintiff argues that the ALJ improperly relied on the testimony of the VE whose testimony was in response to a hypothetical question that did not accurately portray Plaintiff's impairments. He asserts that the ALJ chose to follow the first hypothetical, which was not representative of his limitations and abilities, while completely ignoring the more representative second hypothetical. He contends that the second hypothetical accurately portrayed his abilities because it imposed the following nonexertional limitations: (a) not able to understand, remember and carry out very short and simple instructions on a regular and sustained basis, (b) not able to maintain regular attendance and be punctual, (c) not able to sustain an ordinary routine without special supervision on a frequent basis, (d) unable to work in coordination with or in proximity to others, (d) unable to interact with the public or coworkers, and (e) unable to make simple work-

related decisions. Because the VE testified that the limitations listed in the second hypothetical were work preclusive, Plaintiff contends that had the ALJ adopted the second hypothetical she would have found that he was disabled.

The ALJ is required to present a hypothetical question that includes only those limitations she finds to be credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). The hypothetical must "accurately portray[] [the plaintiff's] individual physical and mental impairments" in order for the VE's response to constitute substantial evidence. *Varley*, 820 F.2d at 779 (citations omitted). "An improper hypothetical question cannot serve as substantial evidence under § 405(g), and can result in a remand or reversal." *Edwards v. Barnhart*, 383 F.Supp.2d 920, 931 (E.D. Mich. 2005) (citing *Whitmore v. Bowen*, 785 F.2d 262, 263-64 (8th Cir. 1986)).

Plaintiff's argument that the ALJ should have followed the VE's testimony in response to the second hypothetical is unpersuasive. As discussed in the preceding section, the ALJ thoroughly reviewed and discussed the evidence of record showing that Plaintiff's impairments were not as severe as he alleged. She cited evidence showing that Plaintiff was capable of performing simple, routine tasks, he had no impairment in his short or long-term memory, well-organized thoughts, good contact with reality, and he was able to maintain employment as a caretaker for seven years. She discussed medical evidence showing that Plaintiff's ability to maintain concentration, understand, and complete tasks and expectations were only somewhat impaired. She also cited evidence showing that he was cooperative and attentive during medical examinations and he was able to interact with others at weekly substance abuse meetings. She noted that Plaintiff had recently begun taking medication for his mental condition and reported significant improvement in the stability in his mental state while on medication.

The ALJ followed the testimony of the VE in response to the first hypothetical, which limited Plaintiff to understanding, remembering and carrying out simple instructions and performing simple tasks and goal oriented work, with no production rate or pace work and no more than occasional interaction with the public and coworkers. The first hypothetical was consistent with the ALJ's RFC determination, which was well-supported with citations to the record. The VE testified that an individual with the limitations listed in the first hypothetical could perform Plaintiff's past relevant work as well as other jobs that were available in the national economy. The ALJ found that the first hypothetical accounted for Plaintiff's credible limitations. Her decision is supported by substantial evidence and should not be disturbed.

*3.     Ability to Perform Past Relevant Work*

Next, Plaintiff argues that the ALJ improperly delegated her analysis regarding past relevant work to the VE. He contends that the ALJ should not have relied on VE testimony that Plaintiff could perform his past relevant work because it is the ALJ, and not the VE, that must evaluate Plaintiff's ability to perform past relevant work.

If the Commissioner is unable to determine in the first three steps of the sequential analysis that the claimant is disabled, the Commissioner will proceed with the analysis and consider the claimant's residual functional capacity together with his vocational background. 20 C.F.R. §§ 404.1560(a), 416.960(a). When considering the claimant's vocational background, the Commissioner is directed to "first compare [her] assessment of your residual functional capacity with the physical and mental demands of your past relevant work." 20 C.F.R. §§ 404.1560(b), 416.960(b). The Commissioner is required to find that the claimant is not disabled if the claimant remains capable of performing his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). In

making this determination the Commissioner "may use the services of vocational experts or vocational specialists ... to obtain evidence [the Commissioner] need[s] to help ... determine whether [the claimant] can do [his] past relevant work, given [the claimant's] residual functional capacity." 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). The vocational expert may "offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work...." 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2).

The Sixth Circuit has held that vocational expert testimony may constitute substantial evidence to support the ALJ's determination that the claimant is able to perform past relevant work. *Griffeth v. Comm'r*, 217 Fed. Appx. 425, 429 (6th Cir. 2007).

Plaintiff's argument that the ALJ committed legal error by relying on VE testimony to support her determination that Plaintiff was able to perform his past relevant work is without merit. Furthermore, the ALJ found, based on VE testimony, that Plaintiff retained the residual functional capacity to perform other jobs that existed in significant numbers in the national economy. The Court should find that the ALJ did not err in concluding that Plaintiff is not disabled.

**REVIEW OF REPORT AND RECOMMENDATION**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this

Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: November 18, 2013      s/ Mon a K. Majzoub
                              MONA K. MAJZOUB
                              UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: November 18, 2013           s/ Lisa C. Bartlett
                                   Case Manager